A07A1263. THE STATE v. LAMB.
(651 SE2d 504)

ANDREWS, Presiding Judge.

The State appeals from the trial court's order granting Robert Lamb's motion for new trial after a jury convicted him of sexual battery. The trial court granted Lamb's motion for new trial after finding that Lamb received ineffective assistance of counsel. For the reasons discussed below, we agree and affirm.

The evidence at trial was that the victim in this case, A. A., was the 15-year-old half-sister of Lamb's wife Shannon. A. A. testified that she would often spend the weekend with her sister and brother-in-law and would babysit for them when needed.

When staying with the Lambs, A. A. slept on the couch in the living room. On the night in question, Lamb was sitting on one end of the couch and A. A. was lying on the couch with her feet in Lamb's lap. Lamb's seven-year-old daughter, who was also in the room, was asleep on the love seat. A. A. stated that Lamb was giving her a foot massage and then started moving his hands further up her legs. She testified: "I started feeling uncomfortable and I didn't know what to do. So I just froze, basically and it got to where he was kind of laying

---

[6] See *In re Estate of Sieg*, supra at 361 (3); *Popham v. Garrow*, 275 Ga. App. 499, 500 (2) (621 SE2d 468) (2005).

on the back side of the couch with like one hand in like my groin area and one on my side and he was rubbing me and I didn't know what to do."

A. A. said that she got up and went into the bathroom for awhile and then came back and lay down on the couch. Lamb was still there, but after A. A. came back to the sofa, he left and went to bed.

A friend of A. A.'s testified that A. A. was nervous and shaking when she described the incident. A. A.'s mother testified that although A. A. was supposed to stay with her sister through the weekend, she insisted that her mother take her home the next day. Shortly afterward, A. A. woke her mother during the night, crying, and told her about the incident with Lamb. A. A.'s mother said that she called Shannon Lamb the next day and told her to pack a bag and bring the children to her house. The mother also read a letter to the jury that Lamb wrote to her, which stated in pertinent part: "I'm writing this letter to tell you how sorry I am for my actions concerning [A. A.]. . . . I know I'll never again be thought of by you as anything but a child molester. . . ."

A. A.'s other half-sister, D. S., testified as a similar transaction witness. She stated that she lived with Lamb and her sister after they were married. One night Lamb came into her bedroom when she was asleep and began touching her in the "private area" between her legs. She stated that she never told anyone but she told A. A. "to be careful around him, to watch him."

The detective assigned to the case said that when he interviewed Lamb, Lamb admitted to using "bad judgment." Lamb said that he had rubbed A. A.'s feet and legs but did not touch her above her knee. He admitted to lying beside her on the couch.

Lamb testified in his own defense and admitted rubbing A. A.'s knee. He said that he did not think anything of it at the time, but later realized that it was inappropriate and that was why he wrote the letter of apology to A. A.'s mother.

Although Lamb was charged with child molestation, the jury found him guilty of the lesser included offense of sexual battery. Lamb filed a motion for new trial claiming that he received ineffective assistance of trial counsel because counsel did not impeach the similar transaction witness D. S. with her prior convictions for theft and forgery. The trial court agreed and found that there was a reasonable likelihood that the outcome of the trial would have been different had counsel been able to impeach D. S. with her criminal convictions. This appeal followed.[1]

---

[1] OCGA § 5-7-1 (a) (7), as amended in 2005, gives the State the right to appeal the grant of a motion for new trial.

The standard of review in this case is set out in OCGA § 5-5-50: "The first grant of a new trial shall not be disturbed by an appellate court unless the appellant shows that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding judge." Accordingly, "we will reverse the first grant of a new trial only if the evidence of record absolutely demanded the verdict as rendered." (Punctuation and footnote omitted.) *State v. McMillon*, 283 Ga. App. 671, 672 (642 SE2d 343) (2007).

To establish ineffective assistance of counsel, Lamb must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Gross v. State*, 262 Ga. 232, 233-234 (1) (416 SE2d 284) (1992). The test is whether there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel. *Gross*, supra.

1. Trial counsel's performance was deficient because he failed to obtain D. S.'s criminal records. At the hearing on Lamb's motion for new trial, appellate counsel questioned Lamb's trial counsel about why he did not introduce evidence of D. S.'s prior theft and forgery convictions. Counsel responded that he asked Lamb to get the records for him and Lamb agreed to do so. Accordingly, the State argues, the fault was Lamb's, not trial counsel's.

As the trial court noted, this case is very similar to *Tenorio v. State*, 261 Ga. App. 609 (583 SE2d 269) (2003). In *Tenorio*, defense counsel's investigator did not interview or make a diligent effort to locate potential alibi witnesses. Id. at 612-613. In concluding that defense counsel's pretrial investigation was deficient, this Court held that although it was the investigator and not trial counsel who shirked his duties, the ultimate responsibility for ensuring a thorough investigation lies with trial counsel. Id. at 613. Here, trial counsel made no effort to investigate or to obtain the criminal records at issue before trial, and did not ask for more time or a continuance when he learned that Lamb did not have the records. Therefore, trial counsel's pretrial investigation was deficient. Id.

2. The trial court correctly determined that, but for this failure to impeach the similar transaction witness, there was a reasonable probability that the outcome of the trial would have been different. *Strickland* defines a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Strickland*, supra at 694.

In his motion for new trial and on appeal, Lamb points out that the jury had doubts about the victim's testimony because they did not find him guilty of child molestation, but of the lesser included offense of sexual battery. Also, there was evidence that the victim had reason

to lie because her mother was planning to move closer to Lamb and his wife, and the victim did not want to leave her school and friends.

There was evidence that the incident was not reported until after Shannon Lamb hired a divorce lawyer and it was the divorce lawyer who arranged the first interview between the victim and investigators. The videotape of this interview shows the victim laughing, which may also have influenced the jury.

As the trial court noted, the similar transaction witness was another sister of Shannon Lamb's and the jury might have believed that she had a reason to lie in order to help her sister receive a more favorable divorce settlement.

Given that the evidence at trial was not overwhelming, this impeachment evidence was particularly crucial. See *Tenorio*, supra at 613. Accordingly, there is a reasonable probability that trial counsel's failure to introduce this evidence prejudiced the defense. Id. Therefore, the trial court did not err in concluding that Lamb received ineffective assistance of counsel. It follows that the trial court's grant of Lamb's motion for new trial was not error.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED AUGUST 31, 2007.

*Kermit N. McManus, District Attorney, Mark P. Higgins, Jr., Assistant District Attorney*, for appellant.

*Rodney Q. Quarles*, for appellee.