## A08A0739. CARLOS v. THE STATE.
(664 SE2d 808)

BERNES, Judge.

Juan Carlos appeals his convictions for two counts of aggravated assault arising from a gang-related shooting incident. Carlos argues that the evidence was insufficient to support his convictions and that his trial counsel was ineffective. We disagree and affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Footnotes omitted.) *Garcia v. State*, 290 Ga. App. 164 (658 SE2d 904) (2008).

So viewed, the evidence presented at trial showed that Carlos belonged to a street gang called La Raza. The victims, Jeraldo Salizar

---

[9] OCGA § 48-5-2 (3) (B) (i)-(iv).
[10] See *Hill*, supra.

and Jose Robles, were or had been affiliated with a rival street gang. In October 2005, the victims were sitting outside a barbershop when several individuals belonging to the La Raza gang began "thr[owing up] gang signs" in a threatening manner from the opposite side of the street.

Concerned, the victims moved to an alley behind the barbershop. Shortly thereafter, Carlos, who was accompanied by several other "guys," came around the corner and began firing a gun at the victims. The victims ran as Carlos chased and continued to shoot at them. After Robles ran into a laundromat, Carlos caught up to Salizar and shot him in the chest.

Robles's sister heard the gunshots and ran into the alley, where she saw the gunman running into the adjoining woods. She gave the responding officers a description of the man that she had seen. An officer subsequently located Carlos, who matched the physical description given by Robles's sister, at a nearby bus stop. The officers then conducted a "show up," and Robles positively identified Carlos as the shooter. Carlos was subsequently arrested and, after being informed of his *Miranda* rights, gave two separate statements in which he admitted to having held a gun on the day in question and being in the alley behind the barbershop at the time of the shooting.

1. The evidence set forth above was sufficient to support the jury's conclusion that Carlos committed an aggravated assault against each of the victims.[1] OCGA §§ 16-5-20 (a), 16-5-21 (a) (2); *Squires v. State*, 265 Ga. App. 673, 674-675 (1) (595 SE2d 547) (2004); *Cyrus v. State*, 231 Ga. App. 71, 72 (1) (498 SE2d 554) (1998). Any inconsistencies in the witnesses' testimony were for the jury to resolve. *Moore v. State*, 283 Ga. 151, 153 (1) (656 SE2d 796) (2008). At trial, Robles testified that he had looked directly into Carlos's face from a distance of three to four feet and that he had no difficulty identifying Carlos, whom he recognized from prior encounters, as the gunman. His testimony alone was sufficient to sustain Carlos's convictions. See OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Range v. State*, 289 Ga. App. 727, 729 (2) (658 SE2d 245) (2008).

2. Carlos also argues that his trial counsel rendered ineffective assistance.

The two-prong test for determining the validity of a claim of ineffectiveness of counsel provided in *Strickland v. Wash-*

---

[1] As charged, the offense of aggravated assault required proof that Carlos attempted to commit a violent injury to the victims or committed an act which placed the victims in reasonable apprehension of immediately receiving a violent injury, and that he did so with the use of a deadly weapon. OCGA §§ 16-5-20 (a); 16-5-21 (a) (2).

*ington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency.

(Citation omitted.) *Jones v. State*, 289 Ga. App. 219, 222 (2) (656 SE2d 556) (2008). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." (Citation and punctuation omitted.) Id. at 223 (2). We will address each of Carlos's specific allegations in turn.

(a) Carlos contends that his trial counsel was ineffective because she failed to cross-examine the state's witnesses, specifically Carlos's ex-girlfriend and Robles's sister, regarding Carlos's actual, physical appearance on the day of the shooting. At the motion for new trial hearing, Carlos's trial counsel testified that her defense strategy had been to prove that Carlos had been misidentified as the shooter. During her cross-examination of an investigating officer, she highlighted the fact that Robles had originally told the police that the perpetrator was 5'6" tall and 110 pounds and Salazar had described him as 5'5" tall and skinny. Significantly, she also pointed out that the police report indicated Carlos was 5'2" tall and 140 pounds.

Carlos does not dispute that his counsel elicited testimony regarding Carlos's physical description, but rather argues only that she could have done it through different witnesses. Any additional evidence in that regard would have been cumulative, and "trial counsel's failure to present cumulative evidence does not amount to ineffective assistance." (Footnote omitted.) *Gibson v. State*, 291 Ga. App. 183, 189 (5) (661 SE2d 850) (2008). We also note that neither Carlos's ex-girlfriend or Robles's sister testified at the motion for new trial hearing. Thus, Carlos has not demonstrated that the omitted testimony would have altered the outcome of the trial. See *Spear v. State*, 271 Ga. App. 845, 846-847 (2) (610 SE2d 642) (2005).

(b) Carlos next argues that his counsel rendered ineffective assistance when she instructed Carlos to show the jury a tattoo on his forearm which read "M[i] Raza." We disagree.

A constant theme in the state's case was that the shooting was motivated by Carlos's membership in the gang La Raza, a rival of the gang with which the victims were or had been affiliated. At the motion for new trial hearing, Carlos's trial counsel explained that she had requested that Carlos expose his tattoo in order to clarify that, contrary to the state's assertions, it did not display the name of his alleged gang, but rather read "my race" in Spanish, a showing of Spanish pride. She also testified that she believed that having the

state's witness read the tattoo directly from Carlos's body presented the most effective method of proving its accuracy.

It is clear from trial counsel's testimony that her handling of the tattoo was a matter of trial strategy that does not equate to ineffective assistance of counsel. See, e.g., *Taul v. State*, 290 Ga. App. 288, 293 (4) (b) (659 SE2d 646) (2008); *Mattis v. State*, 282 Ga. App. 49, 52 (4) (b) (637 SE2d 787) (2006). We will not second guess her tactics on appeal. See id.

(c) Carlos contends that his counsel was ineffective for failing to request independent scientific testing of the gunshot residue sample taken from Carlos's hands and for failing to request that Carlos's clothing be tested for blood splatters.

As Carlos was being questioned following his arrest, he agreed to submit to a gunshot residue test. Later in the interview, the interrogating detective told Carlos that the test had come back positive, although in fact the sample had not yet been tested. Carlos immediately explained that he had been handling a gun earlier in the day. Carlos continued to deny his involvement in the crime, but expounded upon why his hands would otherwise contain gunshot residue. Thus, Carlos cannot establish that he was prejudiced by his counsel's failure to order an independent test, which in light of Carlos's statement would be expected to yield a positive result. See generally *Vasser v. State*, 273 Ga. 747, 749-750 (3) (a) (545 SE2d 906) (2001); *Robertson v. State*, 278 Ga. App. 376, 382 (6) (c) (629 SE2d 79) (2006).

Carlos did not question his trial counsel at the motion for new trial hearing regarding trial counsel's failure to request testing upon Carlos's clothing. "In the absence of testimony to the contrary, counsel's actions are presumed strategic." (Citation and punctuation omitted.) *Patel v. State*, 279 Ga. 750, 754 (c) (620 SE2d 343) (2005).

(d) Carlos next asserts that his trial counsel was ineffective because she failed to "timely and more specifically object" to an incriminating statement given by Carlos in Spanish and translated by a Spanish-speaking officer into English. Carlos's assertion is simply not supported by the record.

Following his arrest, Carlos was taken to police headquarters for questioning. There, Carlos was introduced to Detective Boyd. Although Carlos initially spoke to the detective in English, he requested a translator after being notified that he was a suspect in the shooting. The detective immediately granted his request by retrieving Detective Toledo, a Spanish-speaking officer. Detective Toledo testified that he was raised speaking Spanish in his home and he spoke it fluently; that he frequently translated in Spanish for his family, citizens, officers, and other detectives; that he had been

translating for the police department for nine years; and that he once served as a liaison for the Latino community.

Carlos was advised of his *Miranda* rights in both English and Spanish. He was then presented with a Spanish waiver form on which he initialed that he understood each right and signed that he agreed to waive those rights.

Carlos proceeded to give two different statements to the detectives, speaking intermittently in both English and Spanish. Detective Boyd took notes of Carlos's first statement as it was being given and, when made in Spanish, as it was being translated by Detective Toledo. Because Carlos offered at least three different versions of events, Detective Boyd ultimately gave Carlos a blank piece of paper and requested that he write and sign a second statement in Spanish, which he did. Carlos also signed the first statement written by Detective Boyd after having Detective Toledo verbally translate it into Spanish. In the statements, Carlos admitted that he had been behind the barbershop and witnessed the shooting, although he denied any involvement in it.

Carlos's trial counsel moved to suppress the statements on the ground that he did not knowingly waive his right to counsel. She also argued that Carlos's first statement was unreliable due to the fact that it represented Detective Boyd's notes of statements being made by Carlos and translated by a noncertified translator. After conducting a *Jackson-Denno* hearing, the trial court admitted the statements after concluding that Carlos knowingly and voluntarily waived his *Miranda* rights and that Detective Toledo's ability to understand and converse in Spanish was sufficient to assist in the translation. The trial court's findings were clearly supported by the record.

Carlos nonetheless argues that his trial counsel was ineffective for failing to "timely and more specifically object" to the admission of the first statement. The record reflects that, not only did his counsel move to suppress the statement prior to trial, she objected at the time that the state moved to admit the statement into evidence, vigorously challenged the accuracy of the statement throughout her cross-examination of both of the detectives involved in the interrogation, and emphatically questioned the reliability of the statement during closing argument.

Moreover, contrary to Carlos's assertions, the fact that Detective Toledo was not a certified translator does not require suppression of the statement. *Delacruz v. State*, 280 Ga. 392, 394-395 (2) (627 SE2d 579) (2006); *Nguyen v. State*, 273 Ga. 389, 395-396 (2) (b) (543 SE2d 5) (2001). Carlos has not demonstrated that any further objection to his statement would have been successful. Thus, this allegation of ineffective assistance of counsel fails. See generally *Vasser*, 273 Ga.

at 749-750 (3) (a); *Campos v. State*, 263 Ga. App. 119, 121-122 (587 SE2d 264) (2003).

Carlos also argues that his counsel was ineffective for failing to request a limiting instruction regarding the statement.[2] He neglects, however, to propose what limiting instruction would have been warranted and otherwise fails to provide any argument as to why it would have been proper. Accordingly, this argument is deemed abandoned. Court of Appeals Rule 25 (c) (2); *Bruster v. State*, 291 Ga. App. 490, 492 (4) (662 SE2d 265) (2008).

(e) Finally, although not specifically enumerated, Carlos alleges generally that his counsel spent inadequate time conferring with him prior to trial and failed to call a witness that would have been favorable to his defense. The record reflects that Carlos's counsel presented a vigorous defense on his behalf and Carlos has failed to demonstrate how additional time with counsel would have impacted the outcome of his case. See *Ruffin v. State*, 283 Ga. 87, 91 (12) (d) (656 SE2d 140) (2008). Furthermore, his failure to proffer the testimony of any uncalled witness renders it "impossible for him to show there is a reasonable probability the results of the proceedings would have been different" and is thus fatal to his claim. (Citation and punctuation omitted.) *McRae v. State*, 289 Ga. App. 418, 420 (2) (657 SE2d 323) (2008).

*Judgment affirmed. Ruffin, P. J., and Andrews, J., concur.*

DECIDED JULY 2, 2008.

*Saundra M. Davis*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.

---

[2] The trial court fully instructed the jury on the relevant principles surrounding their consideration of Carlos's statements.